UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROSELYN EDWARDS ROGERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:24-cv-02055-RLY-MJD |
| ) | |
| CITY OF INDIANAPOLIS, ) | |
| GUNNAR GOSSETT, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

Defendant City of Indianapolis ("City") has moved for a protective order to shield Randal Taylor, the former Chief of the Indianapolis Metropolitan Police Department ("IMPD"), from testifying at a deposition. [Dkt. 72.] For the reasons explained below, the City's motion is **GRANTED**.

**I. Background**

Plaintiff Roselyn Edwards Rogers brings this lawsuit on behalf of herself and the estate of her deceased son, Darcel Edwards. [Dkt. 1-3.] The Complaint alleges that Defendant IMPD Officer Gunnar Gossett fatally shot Mr. Edwards while Mr. Edwards was experiencing an "adverse medical condition." [*Id.* at ¶ 12.] The Complaint includes two claims for relief based on these allegations. Count I is a Fourth Amendment excessive force claim against Officer

Gossett in his individual capacity. [*Id.* at ¶¶ 15-20.] Count II is a state tort claim for "Wrongful Death / Battery" against the City and Officer Gossett in his individual capacity. [*Id.* at ¶¶ 21-27.] Count II alleges, in relevant part,

> That Darcel Edwards' death was a direct and proximate result of the careless and negligent acts of City. City failed to exercise ordinary care to train, supervise, and monitor the actions of Gunnar Gossett who acted as an agent for City.
> . . .
> That City was careless and negligent in training, supervising and monitoring Gunnar Gossett, agents and employees [*sic*] of City as displayed by the willful, wanton, excessive, and unreasonable force utilized by Gunnar Gossett.[1]

[*Id.* at ¶ 22, 24.]

Plaintiff seeks to depose Randal Taylor, who was IMPD's Chief of Police when Mr. Edwards was shot. According to Plaintiff, Chief Taylor's deposition testimony is relevant to her "negligent training claim and constitutional violation allegations" because he implemented a use of force policy and a de-escalation training program ("ICAT") in response to a pattern of police shootings during his tenure as Chief. [Dkt. 78 at 1.] The City has moved for a protective order under the "apex doctrine," which shields high-level officials from depositions in certain circumstances. [Dkt. 72.] The City's motion for a protective order is fully briefed and ripe for review.

## II.  Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." "Relevance in discovery is broader than relevance at trial; during discovery, 'a broad range of potentially

---

[1] The Complaint also includes Count III, which is a claim against the City for tampering with evidence, but that claim is not relevant to the present motion. [Dkt. 1-3 at ¶¶ 28-33.]

useful information should be allowed' when it pertains to issues raised by the parties' claims." *Bank of Am., Nat'l Ass'n v. Wells Fargo Bank, N.A.*, 2014 WL 3639190, at *3 (N.D. Ill. July 23, 2014) (quoting *N.L.R.B. v. Pfizer, Inc.*, 763 F.2d 887, 889-90 (7th Cir. 1985)). Before issuing a protective order on discovery, the courts must consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it," and society's interest in furthering "the truth-seeking function in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). The party seeking a protective order must show good cause for entry of the order. See *Williams v. Angie's List, Inc.*, 2017 WL 1318419 (S.D. Ind. Apr. 10, 2017).

### III. Discussion

"In order to shield high-ranking public officials from an excessive and unmanageable volume of subpoenas for their testimony, courts have required a party seeking such testimony to demonstrate that the official has personal knowledge of matters directly relevant to claims and defenses that cannot reasonably be obtained from other, more convenient sources." *Hudkins v. City of Indianapolis*, 2015 WL 4664592, at *7 (S.D. Ind. Aug. 6, 2015).

The parties do not dispute that Chief Taylor was a high-ranking public official. Instead, they argue over whether he has knowledge that is relevant to Plaintiff's claims that cannot be obtained from other, more convenient sources and whether his status as the **former** Chief of Police is a factor the Court should consider in ruling on the City's motion.

As an initial matter, the Court is unpersuaded that Chief Taylor's status as the former Chief of Police would make his deposition substantially less burdensome. A similar argument was rejected in a case where the plaintiff sought to depose the City of Chicago's former Chief

3

Administrator of the Civilian Office of Police Accountability. *See Lee v. City of Chicago*, 2021 WL 2399999, at *3 (N.D. Ill. June 11, 2021) ("[I]t is well-settled that [t]he apex doctrine is no less applicable to former officials than to current officials") (collecting cases). The court explained that deposing a former high-level official may not directly burden an organization's day-to-day operations, but other important rationales behind the apex doctrine still apply because "indiscriminate depositions of high-ranking officials would likely discourage people from accepting positions as public servants irrespective of whether those deposed were current or former officials." *Id.* at *6 (cleaned up).

      Further, the Court finds that Chief Taylor has only *de minimis* knowledge of the facts underlying Plaintiff's Fourth Amendment claim and that the burden of deposing him outweighs the value of his testimony. Importantly, Plaintiff sues Officer Gossett under the Fourth Amendment in his individual capacity only, which means that her Fourth Amendment claim arises from Officer Gossett's individual conduct rather than from any policy or custom of IMPD. *See Giese v. City of Kankakee*, 71 F.4th 582, 588-90 (7th Cir. 2023) (describing the basis of a *Monell* claim, which is premised on a government agency's unlawful policy or custom, as opposed to an individual capacity claim, which is premised on an individual employee's unlawful conduct in a specific instance). Chief Taylor was not present when Mr. Edwards was shot, and his knowledge about the shooting, such as it is, comes from reports after the fact. Given the volume of excessive force lawsuits against police officers, requiring the Chief of Police or a similarly high-ranking official to sit for a deposition in each case would impose a tremendous burden on law enforcement. Unless the Chief of Police has some direct involvement in the underlying incident or some knowledge that is otherwise important to the case, the value of the

Chief's testimony will be outweighed by the burden of the deposition. *See*, *e.g.*, *DeLaney v. Beth*, 339 F.R.D. 610 (E.D. Wis. 2021) (permitting deposition of elected sheriff who approved the decision to use force against protestors and acted as a final policymaker for purposes of the plaintiff's *Monell* claim). Here, Chief Taylor has no more knowledge of this incident than of any other incident of alleged excessive force during his tenure as Chief, and the value of his testimony is therefore outweighed by the burden of deposing him.

    The Court finds that the value of Chief Taylor's testimony with respect to Plaintiff's negligent training, supervision, and monitoring claim is also outweighed by the burden of deposing him.[2] Plaintiff argues that Chief Taylor "personally developed, implemented, and promoted the ICAT training program, use of force training and de-escalation training," that he "appears prominently in the ICAT training videos shown to Officer Gossett," and that he "personally re-wrote the use-of-force policy in 2020," but these arguments overstate Chief Taylor's direct involvement in Officer Gossett's training, supervision, and monitoring. [Dkt. 78 at 1-2.] IMPD's use of force policy bears Chief Taylor's name in the footer of the document, but the record does not support a finding that he personally wrote this policy as Plaintiff argues.

---

[2] Count II is artlessly pled. It is titled, "Wrongful Death / Battery," but the allegations against the City described therein sound in negligence. [Dkt. 1-3 at ¶¶ 22, 24.] The City argues that the Court should interpret Count II as a battery claim only due to this title and ignore the paragraphs accusing the City of negligence. [Dkt. 80 at 6-7.] The City also argues, in a footnote in the reply brief, that Indiana recognizes governmental immunity from negligent training claims. [*Id.* at 7 n.2.] The Court declines the City's request to interpret Count II so narrowly. First, it is well-established that "[a] complaint need not identify legal theories, and specifying an incorrect theory is not fatal to a claim." *King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014) (collecting cases). Second, the City did not move to dismiss Plaintiff's negligent training, supervision, and monitoring claim in a motion to dismiss or a motion for judgment on the pleadings, and its attempt to dispose of this claim in a footnote to a reply brief on a discovery motion is procedurally improper.

[Dkt. 78-10.] Further, Chief Taylor's appearance in the ICAT training video does not support a finding that he has valuable knowledge about Officer Gossett's training, supervision, or monitoring. To the contrary, his involvement in this training program appears to be broad enough that, under Plaintiff's theory, he could be deposed in any excessive force case that involves allegations of inadequate training (after all, he appeared in the video that was shown to all officers who took part in the ICAT training), but too shallow for him to provide any valuable information that would justify the burden of deposing him. The Court can imagine scenarios where Chief Taylor's involvement in personnel training might justify ordering his deposition, *e.g.*, in a case where there were issues about the training and supervision of officials who directly reported to him, but that is not the case here.

Plaintiff also has reasonable alternatives to deposing Chief Taylor. She argues that there are certain topics that only Chief Taylor can testify about, such as "what problems in officer conduct or training the ICAT program was designed to address; the training objectives and expected outcomes; what de-escalation techniques officers were expected to employ in critical incidents; and how implementation and compliance were monitored." [Dkt. 78 at 11.] But these topics could just as easily be noticed for a Rule 30(b)(6) deposition or obtained through another discovery mechanism such as an interrogatory. See *Lee*, 2021 WL 2399999, at *4 (granting protective order and noting that plaintiff had more convenient means of obtaining discovery than deposing an apex witness).

In sum, the burden of deposing Chief Taylor outweighs the value of his testimony. He has *de minimis* knowledge of the shooting underlying Plaintiff's Fourth Amendment claim, and his knowledge about Officer Gossett's training, supervision, and monitoring could reasonably be

6

obtained by less burdensome means, such as a Rule 30(b)(6) deposition or interrogatories.

Accordingly, the City's motion for a protective order is **GRANTED**.

### IV. Conclusion

For the reasons explained above, the City's motion for a protective order, [Dkt. 72], is **GRANTED**. Plaintiff may not depose former IMPD Chief Randal Taylor in this lawsuit.

SO ORDERED.

Dated:  15 OCT 2025

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email