UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROSELYN EDWARDS ROGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-02055-RLY-MJD |
| | ) |
| CITY OF INDIANAPOLIS, | ) |
| GUNNAR GOSSETT, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO COMPEL**

Plaintiff has moved to compel production of Defendant Officer Gunnar Gossett's treatment and personnel records, which she argues will bear on his fitness for duty prior to and during the shooting at issue in this case. [Dkt. 73.] For the reasons described below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I. Background**

Plaintiff Roselyn Edwards Rogers brings this lawsuit on behalf of herself and the estate of her deceased son, Darcel Edwards. [Dkt. 1-3.] The Complaint alleges that Defendant Officer Gunnar Gossett of the Indianapolis Metropolitan Police Department ("IMPD") fatally shot Mr. Edwards while Mr. Edwards was experiencing an "adverse medical condition." [*Id.* at ¶ 12.] The Complaint includes two counts for relief based on these allegations. Count I is a Fourth Amendment excessive force claim against Officer Gossett in his individual capacity. [*Id.* at ¶¶

15-20.] Count II includes a state tort claim for battery against Officer Gossett and a state tort claim for negligent training, supervision, and monitoring against the City of Indianapolis. [*Id.* at ¶¶ 21-27.]

Plaintiff served Officer Gossett with Request for Production 56, which requested "documents relating to medical issues, requests for hardship assignments, medical accommodations, or fitness for duty evaluations concerning Officer Gossett during his employment with [IMPD]." [Dkt. 77-1 at 3.] In response, Officer Gossett produced records from the IMPD Police Pension Fund showing that he medically retired from IMPD on May 13, 2025, because of an injury-on-duty on the date of the shooting resulting in post-traumatic stress disorder ("PTSD"). [Dkt. 75-1 at 2-3.]

During his deposition, Officer Gossett confirmed that his medical retirement arose from a diagnosis of PTSD. [Dkt. 74-2 at 10.] He also testified that he discussed the October 24, 2023, shooting during counseling sessions that were provided to him by IMPD. [*Id.* at 3-4.] Plaintiff asked: "And the PTSD, did it have anything to do with the shooting incident [on October 24, 2023]?" [*Id.* at 10-11.] Officer Gossett answered, "I mean, I guess it could have some aspects to some of it, maybe, I guess. It wasn't the reason for it, if that's the implication, no." [*Id.* at 11.] Plaintiff followed up: "Was the symptom for this process that led you to disability, was it present before the shooting of Darcel Edwards?" [*Id.*] Officer Gossett answered, "No." [*Id.*] Plaintiff then asked, "Did the shooting incident during the riots of 2020, did that have anything to do with you acquiring PTSD?" Officer Gossett answered, "No." [*Id.*]

After the deposition, Plaintiff served Officer Gossett with supplemental requests for production. [Dkt. 77-3.] Request for Production 60 requested "a list of the names and addresses of medical providers that provided psychological treatment, mental counseling or other form of

2

therapy to Defendant Gunnar Gossett from October 24, 2023[,] to present." [*Id.* at 1.] Request for Production 61 requested, "medical records of any sort of Defendant Gunnar Gossett, including but not limited to records of hospitalizations, treatments, medical examinations (including but not limited to examinations for life or health insurance, workman's compensation, and routine examinations), medical consulting, therapy, and/or mental health treatments from October 24, 2023[,] to present." [*Id.* at 1-2.] In a meet-and-confer letter accompanying these supplemental requests, Plaintiff stated: "We respectfully request that Defendants supplement their deficient discovery responses [to Request for Production 56] with the requested medical records of Mr. Gossett's medical treatment related to his PTSD due to the shooting at issue and ultimate medical retirement for said PTSD." [Dkt. 77-2 at 2.]

The parties did not informally resolve their discovery dispute regarding Officer Gossett's PTSD treatment records, and the Court held a discovery conference pursuant to Local Rule 37-1. [Dkt. 71.] They were not able to resolve their dispute at the conference, and the Court authorized Plaintiff "to file a motion to compel a more complete response to Plaintiff's Request for Production No. 56." [*Id.*] That motion is now fully briefed and ripe for review. [Dkts. 73; 74; 77; 78.]

## II.  Legal Standard

"Discovery is a mechanism to avoid surprise, disclose the nature of the controversy, narrow the contested issues, and provide the parties a means by which to prepare for trial." *Todd v. Ocwen Loan Servicing, Inc.*, 2020 WL 1328640, at *1 (S.D. Ind. Jan. 30, 2020). Federal Rule of Civil Procedure 26(b)(1) outlines the scope of permissible discovery and provides that parties to a civil dispute are entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," regardless of admissibility. *Est. of*

3

Daniels by *Stover v. City of Indianapolis*, 2021 WL 4844145, at *1 (S.D. Ind. Oct. 18, 2021). The burden "rests upon the objecting party to show why a particular discovery request is improper[,]" and the objecting party "must show with specificity that the request is improper." *Hunt v. Hubler Chevrolet, Inc.*, 2019 WL 1043163, at *2 (S.D. Ind. Mar. 4, 2019).

### III. Discussion

#### A. Scope of Discovery Dispute

The parties disagree about the scope of their discovery dispute and Plaintiff's motion to compel, so as an initial matter, the Court will address the scope of the discovery dispute before discussing the merits of Plaintiff's motion.

Request for Production 56 seeks "any documents relating to medical issues, requests for hardship assignments, medical accommodations, or fitness for duty evaluations" concerning Officer Gossett during his time at IMPD. [Dkt. 77-1 at 3.] However, the discovery dispute set forth in Plaintiff's meet-and-confer letter, which claims that Defendants' initial response to Request for Production 56 was deficient, more narrowly seeks, "medical records of Mr. Gossett's medical treatment related to his PTSD due to the shooting at issue and ultimate medical retirement for said PTSD." [Dkt. 77-2 at 2.]

In their response brief, Defendants argue that Plaintiff's motion to compel addresses matters outside the scope of this discovery dispute. [Dkt. 77 at 1.] Defendants specifically take issue with Plaintiff's request to compel production of medical and personnel records preceding the shooting on October 24, 2023, her request for a Rule 35 psychological evaluation of Officer Gossett, and her discussion of psychotherapist-patient privilege issues. [*Id.*] Defendants ask the Court to narrowly construe the parties' discovery dispute as whether "records related to mental

4

health treatment and counseling that Officer Gossett received after the incident giving rise to this lawsuit meet Rule 26's relevance and proportionality standard." [*Id.*]

In her reply brief, Plaintiff asks the Court to construe the parties' discovery dispute more broadly and order Defendants to produce all of Officer Gossett's medical and personnel records that bear on his psychological and medical fitness for duty prior to and during the shooting—including records that were created before the shooting. [Dkt. 79 at 2-8.] She concedes that her meet-and-confer letter included a limited request for medical records relating to Officer Gossett's treatment for PTSD after the shooting, but argues that the discovery dispute grew to encompass a broader category of records, including records that were created before the shooting, after she reviewed the transcript of Officer Gossett's deposition and discovered a "contradict[ion]" in his testimony about the etiology of his PTSD. [*Id.* at 3.] She also argues that the parties discussed a broader scope of records during their meet-and-confer conference, that her letter to the Court describing the discovery dispute clearly brought the pre-shooting records to the Court's attention, and that parties and the Court discussed Officer Gossett's treatment and personnel records prior to and after the shooting during the discovery conference. [*Id.* at 6.]

The Court agrees with Plaintiff that the present discovery dispute involves both Officer Gossett's pre-shooting and post-shooting personnel and treatment records. The parties and the Court discussed both sets of records during the discovery conference. Further, the minute entry from that conference authorized Plaintiff "to file a motion to compel a more complete response to Plaintiff's Request for Production No. 56." [Dkt. 71 at 1.] Request for Production 56 encompasses "any documents . . . concerning Officer Gossett during his employment with [IMPD]," and is not limited to treatment records for PTSD after the shooting.

5

The Court will not consider Plaintiff's glancing request for a Rule 35 psychological evaluation of Officer Gossett in this Order. [*See* dkt. 74 at 11.] That matter was not discussed at the discovery conference and is outside the scope of what the Court authorized in its minute entry. Plaintiff may renew her request for a Rule 35 psychological evaluation of Officer Gossett in a separate motion if she deems it appropriate to do so.

### B. Officer Gossett's Post-Shooting Treatment Records for PTSD

For the reasons explained in more detail below, Plaintiff's motion to compel the production of Officer Gossett's treatment records for PTSD after the shooting on October 24, 2023, is denied, and her request to compel production of personnel records prior to the shooting that evaluate his mental health or his fitness for duty is granted.

A document issued by the IMPD Police Pension Fund states that Officer Gossett's PTSD results from an injury-on-duty that occurred on the day of the shooting. [Dkt. 75-1 at 2-3.] Officer Gossett testified at his deposition that he did not experience any PTSD symptoms before the shooting. [Dkt. 74-2 at 11.] When Plaintiff asked whether an earlier event in 2020 caused his PTSD, Officer Gossett answered, "No." [*Id.*] By contrast, there is nothing in the record suggesting that Officer Gossett was suffering from PTSD at any point before the shooting, or that his post-shooting treatment records for PTSD will bear on his fitness for duty prior to or during the shooting. Plaintiff's argument to the contrary is rooted in speculation and amounts to an improper fishing expedition. *See First American Title Insurance Co. v. Hanson Aggregates Midwest*, 2023 WL 2390374, at *3 (N.D. Ill. March 7, 2023) (collecting cases for proposition that speculation alone is not a basis to compel additional discovery).

Officer Gossett's post-shooting treatment records for PTSD are analogous to the contested records at issue in *Simpson v. Cook County Sheriff's Office*, 2021 WL 12318775 (N.D.

6

Ill. Dec. 3, 2021). There, plaintiffs claimed they were rejected for employment as correctional officers on the basis of race. *Id.* at *1. During discovery, defendant requested certain medical and benefit records relating to the plaintiffs' injuries. *Id.* at 2. Plaintiffs produced pre-rejection records relating to these injuries but refused to produce their post-rejection records. *Id.* at *3. The court determined that the post-rejection records had little relevance to the plaintiff's fitness for duty as correctional officers at the time their employment applications were rejected and that compelling them to produce those records would be invasive, unduly burdensome, and not proportional to the needs of the case. *Id.* at *4. Here, the Court finds that Officer Gossett's post-shooting treatment records for PTSD have little relevance, if any, to his fitness for duty prior to or during the shooting because the shooting itself was the event that caused him to develop PTSD, as evidenced by the IMPD Police Pension records relating to his medical retirement, and there is no evidence that he experienced any PTSD symptoms prior to the shooting, as evidenced by his deposition testimony.

Plaintiff argues that a contradiction in Officer Gossett's deposition testimony raises issues about whether he suffered from PTSD before or at the time of the shooting. [Dkt. 74 at 15-16.] The Court disagrees, as Officer Gossett unequivocally denied that he had any PTSD symptoms before the shooting. [Dkt. 74-2 at 11.] The Court agrees that aspects of his deposition testimony regarding the nexus between the shooting and the onset of his PTSD symptoms are somewhat unclear, but those ambiguities could have been addressed by follow-up questions from Plaintiff during the deposition. Indeed, Plaintiff lists a number of questions in her reply brief with respect to Officer Gossett's PTSD that she might have asked during the deposition but apparently did not. [*See* dkt. 79 at 4 ("[W]hen did his PTSD begin? What was the cause? Did his PTSD have any relation or effect on the occurrence of the shooting at issue? Was Defendant Gossett

7

experiencing subclinical symptoms, prodromal features, or other mental health issues before October 24, 2023[,] that would have affected his fitness for duty?").] Plaintiff is not entitled to fish through Officer Gossett's post-shooting treatment records on the speculative theory that they might fill gaps left by her questioning during his deposition.

Turning to Officer Gossett's pre-shooting mental health and personnel records, the Court finds that those records are relevant to Plaintiff's claim against the City for negligent training, supervision, and monitoring. Indeed, Defendants concede in their response brief that "mental health records that predate or relate directly to the incident giving rise to the asserted liability are relevant" under Rule 26. [Dkt. 77 at 6.] It is unclear to the Court whether Defendants have withheld any pre-shooting personnel records that evaluate Officer Gossett's mental health or fitness for duty. Plaintiff states in her reply brief that Defendants have not produced Officer Gossett's pre-employment baseline physical and mental health evaluation, which she argues is required by statute. [*See* dkt. 79 at 5 n.1 (citing Ind. Code §§ 36-8-8-7(a), -19(c) (Baseline statewide physical and mental examinations for police and firefighters)).]

Accordingly, the Court **ORDERS** Defendants to determine whether they possess any additional personnel records for Officer Gossett that pre-date October 24, 2023, and that evaluate his mental health or fitness for duty or that are otherwise encompassed by Request for Production 56. Such records include, but are not limited to, any mental health evaluations that are required by statute. If Defendants have any such records, they shall provide them to Plaintiff **within 14 days of the date of this Order**.

### IV. Conclusion

For the reasons explained above, Plaintiff's motion to compel production of Defendant Gossett's personnel and treatment records, [Dkt. 73], is **GRANTED IN PART** and **DENIED IN**

**PART**.  The Court **ORDERS** Defendants to determine whether they possess any pre-October 24, 2023 personnel records for Officer Gossett that evaluate his mental health or fitness for duty or that are otherwise encompassed by Request for Production 56 and provide those records to Plaintiff **within 14 days of the date of this Order**.  Plaintiff's request to compel production of Officer Gossett's post-shooting treatment records for PTSD is **DENIED**.

    SO ORDERED.

Dated:  20 OCT 2025

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email